We'll hear argument next today in Case 12-1036, Mississippi v. AU Optronics Corp. Mr. Massey. Thank you, Mr. Chief Justice, and may it please the Court. The text and structure of the Class Action Fairness Act of 2005, which is known as CAFA, show that it does not extend to State parents' patria actions. If there were any doubt on the matter, CAFA would have to be narrowly construed as a matter of the principles of federalism that are at issue here, as evidenced by the 46 States supporting Mississippi before the Court. The disposition of the case today, we believe, is straightforward. There is only one plaintiff in this case, the State of Mississippi. It is not a citizen for purposes of diversity jurisdiction, and therefore, the requirements of even minimal diversity, let alone the hundred-person numerosity requirement of CAFA, cannot be met. Our friends on the other side want to use the statute of CAFA to change that result. The mass action definition is the key part of the statute issued today. It is in the Joint Appendix at pages 79 to 80. Essentially, the attempt to force State actions into the mass action definition is a square peg, round hole kind of problem. The mass action definition addresses the situation of mass consolidation or mass joinder when there are a hundred individual plaintiffs or more in a case, and CAFA provides that there is Federal jurisdiction over such a case. But that does not apply to this situation. CAFA refers to real plaintiffs asserting concrete claims and further provides that those claims must be proposed to be tried jointly. None of that happens in a parent's patriotic case where the State is the only plaintiff. Ginsburg. I thought that was the case. Ginsburg. With respect to that, there is a claim for restitution. I take it if the suit is successful, the money that's collected will be distributed to all the people who were affected by this conduct. Well, Justice Ginsburg, that's very unlikely in this case. The plaintiffs – the plaintiff in this case is the State of Mississippi. The consumers of Mississippi have already sued in an indirect purchaser action that has been settled. So they have received compensation. The State does have a restitution claim, Your Honor, is correct, and at page 65A of the response to opposition of the Orange brief, 65A describes the plaintiffs' claim, describes the restitution claim. The restitution claim seeks recovery to the State of the money, not to consumers in Mississippi. And what's likely to happen here, and frankly what happens very frequently when the Federal Trade Commission or the Securities and Exchange Commission or any other State or agency seeks restitution, the money is recovered by the State. And in a case like this where it is very difficult to trace the individuals, the consumers who have been hurt, after all, we're talking an LCD price fixing conspiracy. So every television, computer monitor, phone, toy, digital camera, car navigation system, there are no records, obviously, of who purchased them. And it would cost so much money to identify. Kennedy, you're asking for $10,000 for each one. Pardon me, Your Honor? You're asking for $10,000 for each one. Well, the complaint does pray that. As the case goes forward, the Attorney General, and subject to all the procedures that occur in Mississippi, will have to make a judgment about how that money is to be distributed. In the past, where I can tell you. Sotomayor, let's assume a case where, forget about that the consumer action was settled, and let's forget about a case in which the damages are difficult to prove. Yes. Sotomayor, let's think of a case in which the damages can be determined and the State comes in on behalf of a class of consumers and says we're seeking their restitution. Does your argument change if the facts are different? Our argument does not change. I would say, in our case, the State, just to be clear about restitution, the State is proceeding under statutes that give the State the only cause of action. Only the State can sue under these provisions. If the State, the consumers have separate damages statutes. The consumers would sue under separate statutes in a different court. So the, in a different court, meaning in Mississippi, that would have to be in a circuit court, court of law, as opposed to court of equity. But if a State were to seek restitution and to distribute it to consumers, just to be clear, our argument would not change, because restitution is still a public remedy. And for years, for decades, Federal agencies and States have. Sotomayor, is this a real party in interest argument, or is it a statutory argument that the statute requires named plaintiffs as opposed to named or unnamed plaintiffs, but plaintiffs? Yes, named plaintiffs. The simplest resolution of the case is simply a statutory argument, that on its face, the mass action definition refers to plaintiffs. The only plaintiff is the State. Even if the State has statutory authority to seek restitution, it is still the only plaintiff. So you would not even need to get into the real party in interest test, because the statute doesn't refer to unnamed parties or to people who might be real parties in interest. It refers simply to the plaintiff. So it's an example. So what do you do with the reference to persons? Yes, Your Honor. There is a reference to persons in the mass action definition. It occurs, we believe very strongly that it equates, that section continues and equates persons with plaintiffs, and that the statute, in fact, wouldn't be absurd if it didn't, because it refers to the monetary claims of 100 or more persons, as Your Honor has noted, but then it says that are proposed to be tried jointly on the ground that the plaintiff's claims involve common questions of law or fact. Those two sets have to mean the same thing, otherwise it doesn't make any sense. And furthermore, there are severe practical problems that support our sort of square peg and round hole problem. Alito, I realize that, but I'm not sure why that, why it wouldn't make sense to read two different terms in the same sentence to mean two different things. The persons could be here, the citizens of Mississippi who were damaged by the activity in question. The plaintiff, plaintiffs, here there is one named plaintiff. Plaintiffs can refer to the person or entity or multiple people or entities who were named as plaintiffs. So I don't see what the inconsistency is. Well, because we think our reading is better, because if you were applying the common question test not to the persons who were in the case, those abstract, unnamed, unknown consumers, you're not inquiring as to what their claims might be, you're applying the common question test only to the plaintiff, how could that produce an administrable result? You could have consumers, you never, you would never know whether they presented common questions, and that can't be what Congress was thinking of, because then you would have a license for an unadministrable, this is clearly a reference to the kind of Rule 23 inquiry where, as this Court has emphasized in class action case after class action case, there has to be a rigorous analysis to ensure that there are actual common questions based on the actual claims asserted. And we think that there's the any other reading produces confusion, not just in this section, but also in the remand section, the $75,000 remand section of the statute. CAFR provides that if a claim does not make, does not reach the amount in controversy requirement, it has to be remanded to State court. Roberts, what if you have an executor and he's administering an estate in which 100 people have equal shares to the estate, and the estate has a claim, and he brings it on behalf of the estate? Now, is that covered as a mass action or not? That, of course, is the different case when it's not involving the government, but we think Navarro would essentially address that situation. That's this Court's decision in 1980 that held that the trustees of a business trust were the sole real parties in interest and that the beneficiaries were not, even though they stood to get money as a result of the action. So I think that would address Your Honor's question. The text of the statute still would refer to plaintiffs. So you would inquire in that instance whether under State law this is what happened in Navarro. The Court inquired, does the executor have the legal authority to represent the beneficiaries as the sole plaintiff, and if he or she does, then you would have the single plaintiff situation, you would not be under CAFA. Ginsburg, Mr. Massey, you envision one proceeding could be a class action on behalf of the individuals. That doesn't require everybody to satisfy the amount in controversy. And then this action by the Attorney General, which does, among other things, seek restitution, isn't there an overlap between those two claims? And how do we sort out you said at one point I think you described the restitution as disgorgement of ill-gotten gains. Massey, Yes, Your Honor. Ginsburg, but now we have the consumers who are affected, they've already been paid. So how does it work for the Attorney General's suit? What is the impact of the class action that has already gone forward and been completed on the Attorney General's claim? Massey, Yes, Your Honor. The the when the MDL judge entered the settlement in the class, she indicated her view that it would not preclude a parents' case. Of course, it's open on remand for the defendants to argue that the consumer settlement bars the Attorney General's action. That will have to be adjudicated on the merits in Mississippi. States are free to adopt different rules about this. There is no case that we have found in Mississippi squarely addressing this. There have been a dozen or so parents' cases over the last 10 years. There is a case, though, from the State of Washington which is illustrative. It's actually on page 35 of the red brief, from our friend's brief, and it's a case from the Washington Supreme Court in 1976 called Ralph Winter's Chrysler Plymouth. And in that case, the Washington Supreme Court encountered the situation where the State had sought restitution on behalf of consumers and sought to distribute the money to consumers, and consumers also brought separate damages actions. And the Washington court said there was no double recovery, no preclusion problem, because the restitution remedies were public in nature, and the private damages actions proceeded under different statutory authority were different claims. And whether Mississippi would adopt that approach, I don't know, but that illustrates, I think, ultimately, that these are questions of State law, and there is a longstanding tradition of restitution being a public remedy. After all, the government, we've cited some cases in the brief involving everything from rent control to energy price regulation. The government brings, the Federal government, as well as State governments, has brought restitution actions where it has not returned money to consumers, has sometimes done also sometimes has returned money, has, but in all those cases, consumers never participate, they are never permitted to intervene. Roberts It would make no sense for a defendant in a class action brought by consumers to ever settle the case. It's going to have to pay twice. It's going to have to pay the consumers, and then it's going to have to pay you, because you can say, well, we want restitution, and we're not going to distribute it to the class members, but we're entitled to it, and I assume the amount of the restitution is based on some estimate of the class, of the consumer's claims. Well, the evidence is, the evidence of loss is relevant, but the law is actually well settled in the lower courts. It's not, there's not a decision of this Court, but that a consumer releasing his claim or her claim does not bar the State from proceeding with a public parents' patriae action. The defendants, when they settled, there's a little bit of disagreement in the brief, but the MDL judge took the defendants as conceding that their settlement with consumers would not bar a parents' patriae action. Roberts What is your understanding under Mississippi law, which you know a great deal more than I do, about any limits on a parents' patriae action? Let's say there was one purchaser in Mississippi of LCDs, whatever, or two or three. Could you bring a parents' patriae action on their behalf? That would be a very different case, Your Honor. I don't want to. Well, I know, but I'm trying to. I think probably, I think very unlikely. I don't, it depends on the, for example, let me just put it there. Unlikely as a practical matter or as a legal matter? Both. Both, Your Honor. There are, there are, there's no bright line. And after all, the SNAP, which is the lodestar parents' case from this Court in 1982, involved only 787 workers. They were agricultural workers from Puerto Rico. And the Court, one of the objections was this is not a sufficient quasi-sovereign interest to support a parents' patriae case. And what this Court said was that you can't just look at numbers, because those people represent a public interest. They were, they were alleged wage discrimination, and there was a deterrent effect, so that it wasn't really just 787. It was the entire population of Puerto Rico. Are their parents' patriae actions where the State attorney general brings the action in what is really a suit on behalf of private parties? And if so, do you call it private parents' patriae? Well, we don't think that would be, that is not a proper parents' patriae case. And the attorney general is. In other words, parents' patriae has to have, you have to ask for restitution? Well, no. No. The parents' patriae case, for example, here involves injunctive relief, civil penalties, harm to the State as a purchaser itself of LCD panels. And so restitution, the remedy doesn't matter. But the attorney general has statutory authority in this case to bring a case in the name of the State. He's actually prohibited under the State Consumer Protection Act, all parties are prohibited, from bringing a damages case on behalf of a private consumer, except in that consumer's name. So. Roberts. The State interest that's being, the State interest that's being asserted is damage to the consumers. Well, no. I mean, the State interest is broader than that. It is the harm to Mississippi as a population, as an entity, from this price-fixing conspiracy, just as the Federal government. But because it harmed members of the population of Mississippi, right? Well, yes. But I think in Snap the Court discussed how the, when a harm is broad enough, it affects a substantial segment of the population and affects them in their economic capacity. There are indirect as well as direct effects that the State could be concerned with. Now, let me just. What are those? Well, in other words, there are, if people are harmed by a price-fixing conspiracy, they have less money. They're not, they're not the, they, if they're. Damage to, having less money is a damage to the consumer. Well, that has a ripple effect in the economy. Price-fixing conspiracies have a public dimension. And of course, of course, if this, any challenge to whether this is a proper parents' patriotic case or any case would be hurt on the merits. I, we, we know the defendants will argue back in the Mississippi courts that they have a series of defenses to why this case should not be brought. One of them will be the Attorney General should not have brought it because it's outside his authority. And that issue will be decided in Mississippi. There's a, there's a case of vitamin price-fixing conspiracy case called the BAS. That's a, okay. Roberts, what prevents, what prevents attorneys general from around the country just sitting back and waiting until every as private class actions proceed, and as soon as one settles or one, the plaintiffs, the class prevails, taking the same complaint, maybe even hiring the same lawyers, to go and say, well, now we're going to bring our parents' patriae action. We know how the trial's going to work out or we know what the settlement's going to look like, and we're going to get the same amount of money for the State. Well, the – if there is a harm, as there was in this case, a Federal criminal allegations, there were guilty pleas and there were 800. Well, that's got nothing to do with it, does it? Well, those are serious matters, and I think the State are responsible for it. Well, I'm serious. It's a serious matter when a plaintiff class recovers for, as in this case, an antitrust violation or whatever. And what's the answer? I'm sorry for feeding my question. Well, I think the answer is if the State has separate interests, the interests in this that the State has qua State, yes, it should bring cases where the public has been harmed. Of course, the fact is that there's nothing to prevent 50 attorneys general, 51, from saying every time there's a successful class action as to which somebody in my State purchased one of the items, we're going to file a parents' patriae action, the complaint is going to look an awful lot like the class action complaint, and we want our money. Well, I think that isn't going to happen because the State – well, the complaints are not the same. The State has its own – sues in its own name and its own rights. And, of course, the problem, Your Honor, is hypothesizing. Well, that means that it could happen. Well, it could happen, right. The State – if the State has its own rights and its own interests, it should sue. The attorney general is accountable to the general public. I'm sorry, counsel, but you told me the State's own interest was in protecting its consumers. So it would be able to file this suit every time its consumers have been harmed as demonstrated, either through settlement or suit. That's the State interest, protecting its consumers. If a State – some States may adopt a different rule from Washington. As the Washington court said, the State – the consumer claims would preclude a State attorney general action. If a State does not, if the State legislature authorizes its attorney general to bring a suit when this attorney general can identify harms to the State that are separate from harms to consumers, Your Honor is saying that the two are identical. They are not. And SNAP makes clear that they are not. The State has a broader interest than simply the compensation interest that an individual has. Kennedy, as a matter of efficiency, take the Chief Justice's hypothetical and back it up. The moment the class is certified, why can't the attorney general join it and say, Now, our interest is a little different, but it's so much the same that we want to join it. And we want to join it as parent-patriot. Would that prevent its removal? If the State attorney general was combined with thousands of individual claimants that otherwise would trigger CAFA, then CAFA – then you would be forced into this whole case situation. The whole case test, which you need not reach here because the statute and the real party and interest test are clear, but in the whole case test, you weigh whether the State has an – the essential nature of the proceeding is that the State is the real party and interest. In the hypothetical you posit, I think it would be removable. Obviously, it turns on the particular facts. But, yes, if the State attorney general is in court with a thousand individual claimants, that is probably a CAFA case. That has never happened. And in all of the districts outside the Fifth Circuit, because the Fifth Circuit is the only court that has adopted the rule that we are – that you are reviewing today, every other circuit court has held that CAFA does not extend to State parent-patriot actions. In all of those cases, the attorneys general are not running around following class actions to try to piggyback on top of them. They are not joining other class actions. Those – those worries. Roberts I can't provide any reason why they wouldn't do so, and presumably would start doing so with greater frequency if you prevail in this case. It doesn't have to be the same case. It can be the next case on the Court's docket. The first case is in-ray LCD litigation, and the second case is State of Mississippi v. LCD manufacturers. Well, we don't think so. And certainly the State – a State would be free to adopt a different rule as to preclusion. In other words, a State legislature could say that if consumers have recovered, the attorney general can't, or that the attorney general doesn't have statutory authority in such cases. But when the State legislature has told the attorney general to enforce the public interest and given him statutory authority to do so, he'd be derelict if he didn't honor the legislature's directive. And that's what's happening here, that in a series of cases involving vitamin C, enterprise fixing, adulterated products, Google Street View, where Google found, you know, downloaded data from people's wireless networks, the attorney generals have responded in those cases. Those are what you have to worry about. Roberts. Kennedy. And in every one of those cases, there had been private class litigation prior to the filing of the contract? No, I don't think there has – I don't think there had been in virtually any of them. The attorney general is stepping into the breach when the private lawyers have not brought class actions because of the difficulties of bringing – in bringing class actions. We know that's not true in this case because we already have a settlement. There is a – there was a class action settlement here. Is your view of what's called the mass action, a mass action is you have to have a sizable number of plaintiffs, each one with 75 – at least $75,000 at stake. Is that right? Yes. Yes, Your Honor. So they would all be named plaintiffs. That's correct. That's clearly the sort of mass consolidation is what the mass action definition is addressing. Are there many actions of that nature where there are hundreds of people, each with a claim of 75,000 or more? There are. I don't know particular numbers. There are such cases that are filed in Federal courts and when the plaintiffs are individually identifiable. Why would you bring such a claim in Federal courts in this mass action format? I can see in Mississippi it doesn't have class actions, but if you're in Federal court, why would you ever have a mass action instead of a class action? Well, if you can identify the plaintiffs, you don't need to go through Rule 23. If you know the 150 people who are at issue, you can avoid all the certification rulings and simply proceed in a consolidated basis. It just cuts off part of the inquiry. And Mr. Massey, if you are right about what mass action means in this statute, what is this exception about the general public doing? The general public, the – it's doing two things. First, the – as the amicus brief of public citizen describes the legislative genesis of it, it was really to address the California unfair competition law situation. Where there are private attorneys general who are able to bring suits in the name of the general interest, the general public. And they – that was sort of the original genesis of it. It is a separate reason to reverse. We believe we meet it as well because it addresses a situation where a State is – where any litigant, State or private, is representing the general public as opposed to individual claimants. And here, because restitution is a public remedy and because the individual claimants cannot be identified, the State is proceeding on the basis of the general public of Mississippi. If anyone – the district court found, it's in the Petition Appendix at 49A and 50, the district court discusses the traceability problems. I'm sorry, I say the Petition Appendix, not the Joint. Breyer. Can you tell me when you come back where the money goes if you win? Yeah. The money probably goes to the State treasury. Because in this case, it would be too difficult to trace who gets – who has been harmed. The – that's why the district court found that the – given the ubiquity of the product and the fact that there is no central record of whoever purchased a cell phone in Mississippi, that the cost of finding all these people is just not worth it. There could be – it could wind up in an education program. The Attorney General mentioned to me schools and things like that. But it's not going to go – it's very unlikely to go to the individual consumers. Thank you, Your Honor. I could go on. Thank you, Mr. Massey. Mr. Kern. Mr. Chief Justice, and may it please the Court, the Attorney General's interpretation of the mass action definition requires this Court to conclude that a mass action can only be one of the actions with 100 or more named plaintiffs and can never be a representative action. That interpretation cannot be squared with the statutory language, the purpose of the Act, and the structure of the Act. Justice Kagan, you referred to the general public provision. That provision expressly refers to the possibility of a representative action. In the parenthetical language in that provision, and I look at it on the – in the Act form on 66A, but it's, of course, in the codification as well, on page 79A of the Joint Appendix, the parenthetical there says that this exclusion does not apply in cases where the action is not on behalf of individual claimants or members of a purported class. Okay? So in other words, this exclusion under the mass action definition is contrary to contemplating a situation where there are individual claimants or members of a purported class. That has to be beyond the named plaintiff. Another example, farther down in the exceptions to the mass action definition, there's a reference to Section 1407, which is the MDL transfer provision. There again, there's reference to the possibility of a mass action being converted into a Rule 23 class action. Those provisions don't make sense unless it's possible for a mass action to be a representative action. Sotomayor So how do you remand a case when it involves unnamed plaintiffs? Not a proposed class, because if you have a proposed class, that could be persons, and you could identify those. But under your theory, what does the Court do to figure out which of all of those unnamed people have claims above or below $75,000? Well, a couple of things. Number one, it may well be that the mass action definition, use of persons, that of course our position is that is unnamed. Those are real parties in interest with the claims. The reference to plaintiffs may well be, as the Attorney General posits, the named plaintiffs. So the $75,000 requirement, and Justice Ginsburg referred to this as well, that can make perfect sense. It's a way to make sure that the named plaintiffs, who after all are being given the keys to Federal discovery and maybe the ability to negotiate settlements, that they've got some skin in the game, that the plaintiffs, the named plaintiffs controlling the litigation, have $75,000 or more at stake. You know, this language is very reminiscent in what's in Federal Rule of Civil Procedure 20, the Joinder Rule. Well. And if I look at the Joinder Rule, it uses persons and plaintiffs essentially in the same way. It's talking about persons being proposed plaintiffs as opposed to unnamed people. Well. Or the proposed class, in essence. Your Honor, I see similarities between this provision and the PSLRA, the Private Securities Litigation Reform Act, that reformed class actions in the securities context. And there, there were provisions requiring that the named plaintiff be a prominent victim of the alleged fraud. And here, I think it's got the similar idea, that we want to make sure that the named plaintiffs have that kind of stake. And this is an important point, because I think there's been some suggestion that this is unwieldy or does it make sense if all the claimants under 75,000 get remanded. But recall this Court's jurisprudence on supplemental jurisdiction. Alipata allows for supplemental jurisdiction in a situation like this, where certain plaintiffs do not satisfy the jurisdictional minimum. As long as there are some that do, the district court has discretion to allow those that don't to stay in the same household. Sotomayor, it seems that that would be hard to invoke that case when a statute commands differently. Well, I don't see a fee. In that case, it's in the absence of statutory language that requires remand. Well, I'm hard-pressed to think that we can be exercising supplemental jurisdiction in a case where Congress has expressly spoken and said you can't or shouldn't. Well, I don't understand that, because Section 1367 says supplemental jurisdiction shall exist unless it's expressly provided otherwise in a Federal statute. And this Court, interpreting similar language in the Brewer case, which is cited in the papers, said expressly means it's got to be direct, it's got to be explicit, it has to be inescapable. So I would submit that this language about the 75,000, that does not preclude supplemental jurisdiction. In fact, I think that that argument is foreclosed by Brewer. Ginsburg. In this particular case, the individual claims were settled in the class action. So if there are no individual claimants to be represented, why doesn't this end up being a claim where only the State of Mississippi has a stake, because the individuals that the State might have been representing have already been satisfied. So this is the case. There are a couple aspects to this. First of all, our position, of course, is that the Mississippi statute requires that the money goes to the Mississippi citizens and that the Attorney General, he was basically suing as a representative or a conduit for those citizens. The fact that those citizens, that many of those citizens, not all, but the fact that many of them have settled and have resolved the claims in the multidistrict litigation, that means that there's going to be a fight. In one court or another, we think it should be in the Federal court, the Attorney General thinks in the State court, over what the preclusive effects are of that prior settlement. We view this case as nothing more than an attempt to double dip. It's the same. Breyer, is that — I thought that in a — maybe it's changed since I knew the law in this area. But I thought because of Illinois BRIC, the ultimate consumers couldn't recover, but rather you have to be a direct purchaser rather than an indirect purchaser of the price-fix good. That's under Federal law. Breyer, yes, all right. So in any case, oh, this is a State law case? That was a State law case in Federal court, okay? I know your case is, but the one that settled briefly. Yeah, that's what I'm referring to. That was in Federal court, but it was asserting State claims. All right. So you have a double dip claim. I guess my question procedurally is that here, the State of Mississippi is the named plaintiff. The named plaintiffs. And moreover, the State of Mississippi is suing, in order to obtain money, is what we just heard, for its treasury. And third, the State of Mississippi is suing because of their belief that the defendants injured the economy of Mississippi, and they injured it by herding the pocketbooks of many individuals in Mississippi, the names of whom they don't even know. All right? Now, they say, look at, read the statute, read the cases which say, if you are a nominal plaintiff, that's good enough, as long as you are not suing as some kind of, I forget the words, quasi-sovereign, whatever it was, one way or the other. You know the cases better than I. But why isn't what they just said sufficient? Because we're not disputing that the Attorney General has standing to bring a claim as a nominee for the real parties in interest. I understand that. But why does that fall within this statute? Because the statutory language says, if it's a civil action in which monetary relief claims, we clearly got that, of 100 or more persons, we think those claims under the Mississippi statute inescapably belong to those persons. Well, could you go on and read that a little bit further, Mr. Carvin? Well, I'm getting there. It says claims of 100 or more persons that are proposed to be tried jointly on the ground that the plaintiff's claims involve common questions of law of fact. And here, of course, you know, there's no jointer, let alone any kind of proposed you know, there's no, there's nothing that the Mississippi Attorney General has to go through to show that the plaintiff's claims involve common questions of law of fact, right? They don't, there's no showing of that kind that has to be made in a parent's patriae case. Well, they filed a single complaint, right, under Rule 42 and of the Federal Rules, civil procedures, State analogs to that, and preexisting jurisprudence. When you file a single complaint, you're asking for a single trial. And if you want a bifurcated trial of some kind, you have to make a motion. But again, this clearly refers to But I submit that there is a proposed, a proposal to try these claims jointly. But they don't have to show, I mean, this is clearly referring to a kind of Rule 23 inquiry, which they don't have to go through to do a parent's patriae case. That would be the same thing, Your Honor, in the case that they say is the quintessential mass, mass action case. They say a mass action case is one where a bunch of plaintiffs have joined together in a single suit as plaintiffs. Kagan. Yes, well, they do have to show that. In a mass consolidation case, the judge is going to say you have 100 claims, we want to see that those 100 claims have common questions of law of fact. But in a parent's patriae case, the State never has to make that showing. It can just stand up and say, here we are, we're the State, we're representing the interests of the State across State, here's our claim. Well, Your Honor, I think, I submit that when a State attorney general files a complaint on behalf of 100 or more persons claiming to have standing and to be seeking to recover for the damages to those 100 or more persons, he's proposing to try those claims together. And as to whose claims they are, I mean, the Mississippi statute is pretty clear, that the claim for restitution is necessary to restore to the persons in interest, the victims. Scalia. But the attorney general says that that's not what's going to happen here. How do you square that with his statement that that money will not get to these people? He cited the statute that has that plain language. That plain language was interpreted by the Fifth Circuit. There are – it's a model act that's been interpreted by the State supreme courts of other States, Iowa and Arizona. They looked at that language, oh, yes, the money goes to the people, just like the statute says. Scalia. He says you can't even identify those people. Well, that is – that doesn't hold up. I mean, obviously, those people were identified in the class action. They're getting the money that's being distributed. People can turn in receipts, there are records. Every antitrust case has this issue, identifying the victims and compensating them. There's no different here. And another thing, there was a suggestion that, oh, everybody in the world has LCD panels, that the period of time at issue in this case was 1996 to 2006. LCD panels, which we now take for granted and are ubiquitous, back then were just an emerging technology. And for that, I cite to the attorney general's brief, page 30 – their complaint, page 32A of our cert op, paragraph 104, which acknowledges that LCDs weren't even the leading technology for televisions back during this period of time. Breyer, what about – see, I can understand a complaint where they've taken 100 individuals or 102, and they list them as plaintiffs, and they don't call it a class action. And that would fall right within the meaning of mass action if the numbers are right. That's right. But if we take your approach and depart from that mechanical but simple, simply administered interpretation, what is worrying me, and perhaps you can help me with that, is that there are perhaps all kinds of State actions where one of the motivating reasons is behind the lawsuit is some person hurt our citizens. And so now we will get into the instantly interesting but very difficult question of, well, when you say hurt your citizens, you mean hurt them by giving them rise to an independent cause of action for each of them, who we don't know who they are, and we don't know if the statute of limitations is run to some, and we don't know if others have other disabilities, but nonetheless, we're not certain this suit is entirely for that. It may be mixed up with other things. Do you see the problem once I start down your road? I do. I've departed from the clear and simple. Okay. But to be clear, our – in our position, the only basis we have for removal here is the inclusion of the restitution claim, which under Mississippi law says that the claim belongs to the citizens and it's their money. If that claim wasn't in this action – That seems to be disputed, because I understood Mr. Massey to say that the restitution claim would go to the State, and you say that the restitution couldn't go to the State. That's right. There is a dispute on that issue. Well, you can hold him to that, and I guess he can say, no, I don't want to be held to that, or I am, but that would seem to be not for this Court. Once we get the money, we don't care where it goes. But can we not take him at his word? He said it wasn't. Well, the Mississippi statute is clear. The Attorney General cited that. The case law is clear on that. So – and the Fifth Circuit found that Mississippi law required the money to go to the individual. I think this Court should defer to those prior rulings of those courts. And so basically, back to the statutory language – and by the way, per rens patriae is such a loose label that's thrown around. The Attorney Generals seem to raise that up as a Latin shield of some kind, suggesting that as long as they invoke that term, that issues of federalism prevent removal or something. That doesn't hold up. The statutory language, which is in English, says that specific – specific cases are removable. And so we – I don't think we should – I don't think it's productive to talk about whether something is per rens patriae or not. But, Justice Breyer, there are a lot of cases that can be brought by State Attorney Generals that would not be mass actions. Like this case without the restitution claim. Okay? Also, if there's a big pollution problem or some public nuisance or some other thing like that where there's no identifiable victims but the public as a whole is injured, that probably is a quasi-sovereign claim. Scalia. What do you do about this language in the definition? I haven't heard you explain it. It says it means any mass action, means any civil action in which monetary relief claims of 100 more persons are proposed to be tried jointly on the ground that the plaintiff's claims involve common questions of law or fact. Now, they're not proposed to be tried jointly here on that ground. They're tried jointly on the ground that the suit is being brought by the Attorney General under this State statute. Well, I view that language as contemplating a Rule 23-type analysis. Yes, I understand that. And in this case, we've got a State Attorney General who's suing not only for the consumers but also for himself, right? He's got proprietary claims in there. He's also suing for all the counties and municipalities in Mississippi. I think a basis for his combination of those claims in a single lawsuit is the inescapable commonality of fact and maybe law in those claims. So I do think that it satisfies that language. Kagan. Well, Mr. Kern, really, are you saying that as a matter of State law, that in this suit, the Attorney General has to make a proposal that the plaintiff – that he can bring the suit on the ground that the plaintiff's claims involve common questions of law or fact, and that that proposal has to be adjudicated by the Court? I think, Justice Kagan, that the Attorney General has already done that. I think that his complaint, beginning on the first page, says, I'm bringing this claim on behalf of purchases by the State and by its citizens of these LCD panels, and it's a single complaint. So I think – But he does not have to show any common questions of law or fact in the typical way that we demand. I mean, that's actually a really demanding showing that we have forced lawyers to make in the class action context. All that the Attorney General has to do is to stand up and say, I have a State interest in protecting my citizens and in deterring improper behavior, and here's my substantive right. Well, I guess – I suppose we could move for bifurcation to separate the proprietary claims from the claims on behalf of citizens, and then he would say, no, it makes sense to keep them all together. But the sequencing of those arguments I don't think should be dispositive here. By filing a complaint, again, I invoke Rule 42 of the Federal civil procedure. Kagan. Kagan. Kagan I guess I don't understand the bifurcation point. It seems to me that what the Attorney General is saying is he has a set of claims. They are his claims on behalf of the populace, but to further the State's own interests. And there's none of this Rule 23 kind of business about common questions of law or fact. So it's not a question of, you know, one set of claims, another set of claims, now or later. He has a claim. That's all he has. Well, certainly he at least is attempting to combine the claims of all the various individuals in the State on the grounds of commonality, right? I mean, even if you separate his claims out, I mean, it's the reason this is an instance. Kennedy So suppose it's a given that we all concede that the complaint is both for private named persons and for restitution, both. What result? Well, certainly it's a mass action in that circumstance, because restitution under Mississippi law is for those specified individuals. Kennedy No, the rest of my hypothetical part of the restitution goes to the State. Roberts Well, then, again, the statutory language says if it's a civil action. Kennedy Where's the language? Roberts Well, it's the beginning of the mass action definition. Kennedy Right. Roberts You can look at it on either 65A and 66A or 79A. Kennedy I have 79. Roberts Okay, 79A. Mass action means any civil action in which monetary relief claims of 100 or more persons. So as long as you've got a qualifying claim, then the civil action is removable. And it doesn't matter if there are additional claims or extraneous claims. So the claim here for restitution on behalf of Mississippi citizens is in and of itself enough to make this a mass action. And again, and Justice Kagan, maybe this is getting back to your point, I refer to the general public provision and in the 1407 provision that inescapably mean that this provision can apply to representative actions. Maybe that doesn't satisfy your commonality point, but it gets part of the way there. Kagan And this is the main provision where they're trying to define what mass action means. And I take your point that there are some slippage between this provision and the various provisions that it refers back to, because those provisions were talking about class actions, and this one is talking about mass actions. But this is the essential definition, and this one seems to be pointing to a very different kind of suit, one in which there are 100 individual claims that 100 people seek to have joined in which a court is going to make a determination about whether those 100 individual claims have questions of common law and fact. If that's all this statute was meant to reach, that would have been such an easy statute to write. Instead of this more convoluted language, it could have just said if it's a civil action in which 100 or more named plaintiffs are asserting monetary relief claims for on the joint and proposing to try them jointly. Kagan But that would have required the court to say. Kagan That's essentially what it says. I mean, the only thing it doesn't say in what you just said is that it says persons instead of named plaintiffs. But then if you read the sentence, it's pretty clear that persons and plaintiffs are the same. Fisher Well, how do you explain, I don't mean to pose a question to you, it's inexplicable that the word persons. Kagan I might not answer it. Fisher It's inexplicable that Congress would use the word persons and then 12 words later use plaintiffs if it signifies the exact same thing, and then continue to use the term plaintiffs throughout. Sotomayor Isn't your proposal mean that before someone can remove, they have to decide whether the class is certifiable? Fisher No. Sotomayor Because you're not going to decide whether these plaintiffs are actually going to be plaintiffs and part of this class until you decide the class question. If you use the word persons and you use the language of the statute, it's the class that's being proposed. It's the name plaintiffs and the class that's being proposed of persons that are being proposed to be tried together. Fisher There's another provision in here that is incorporated into the mass action. You know, recall that if something qualifies as a mass action, then the provisions dealing with class actions apply as well, and subpart 8, which is found at the bottom of 77A, specifically says this subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action. So it's what this statute is addressing is possible class actions. And in fact, I think it makes sense to view this statutory question in light of the overriding statutory purpose here. And, Justice Breyer, you addressed this in your opinion in Standard Fire. The driving force behind this statute was to put interstate claims of national importance into Federal court to provide the option of a Federal forum. And in that case, in Standard Fire, this Court unanimously examined the statutory question there through that lens. Here, so Congress dealt with class actions proper, if you will, under Rule 23 in the class action section. And then it's got the mass action section, which is inescapably designed to catch other devices that have the same problems. Scalia, Congress doesn't do it right, you know. Sometimes they try to catch everything, but the language they use doesn't do it. But here I think it does do it, and if there are competing interpretations in that purpose, should drive the decision. But more than that, Mr. Kerry, and it's that there was actually a considerable effort by the Attorneys General here to take themselves out of this statute. And that failed. And that that's – well, you say they failed, and I mean, that's the statutory question, but it's not just Congress didn't do it right this time. It was that there was a very serious effort to get Attorneys General out of this statute, and that's – and, you know, it seems to me that they did pretty well. No, no, no, no. They made their proposal to modify the statute after the Act was in this form. They saw the Act in this form, and including Attorney General Hood, sent a letter to Congress saying this is going to infringe upon our rights to parens patriae cases. That amendment, sponsored by Senator Pryor, failed. So I think the only conclusion that can be drawn from that is that Attorney General Hood, like many of his counterparts at other States, saw this problem, saw this threat. Now, a response that some on the Senate floor gave to that proposal was it's not really necessary. But the reason it wasn't really necessary is because the bona fide interests of the State were already protected through the local controversy rule and through the general public exception. Congress did not intend for State Attorneys General to be able to use their offices to hire outside counsel, out-of-State outside counsel, to copycat a class action complaint from an MDL, bring it again. Ginsburg. Maybe they didn't, but if you look at the committee report, what is the definition of mass action, and it is, under this new subsection D-11, expands a jurisdiction over suits that are brought on behalf of numerous, numerous named plaintiffs. Numerous named plaintiffs. Yes. I'm familiar with that sentence in that Senate report. I'm also aware that that Senate report was issued and dated a week or 10 days after President Bush signed this Act. So I question its value and its credibility. You mean its contrived legislative history? But even if it somehow could be considered, I don't think that sentence is definitional. That certainly is one alternative to conventional class actions that Congress was concerned about. Our point is it wasn't the only one. Congress was trying to close loopholes and trying to prevent abuses, and a miserly interpretation of the class of the mass action definition would undermine that purpose. Now, in my remaining time, perhaps, Justice Kagan, at the end of the day, there was no carve-out in the statute for attorney general actions, even though that was sought. But the Act does reflect some sensitivity for Federalism concerns. It's got an exception for situations where States are the primary defendants or State officials are the primary defendants. There's also a notification to State attorneys general when there's a settlement of a class action. Those kinds of provisions show that Congress was trying to be sensitive. It was horse-trading, it was cutting deals, it was log-rolling, coming up with an Act here that was at once sensitive to Federalism concerns, but also trying to solve the very real abuses that it had identified. And on the Federalism point, the Attorney General's brief has a lot of citations to Eleventh Amendment issues and some of this Court's precedents dealing with State's sovereign immunity. I submit that those precedents and that amendment deal only with situations where the State is a defendant. And here, where we're talking about the State as a plaintiff, and the only intrusion we're talking about is removal from State court to Federal court, that's not on the same playing field as the authorities relied on by the Attorney General. A couple of other things. There was a suggestion in the reply brief that the complaint here was not, in fact, a copycat case, a copycat complaint, but instead was a summary of the Federal indictments, and that that explains the eerie similarity between the class action complaint and the Attorney General's complaint. That's just factually not right. Some companies who were defendants, like my client Toshiba, was never charged or convicted of anything in this case, yet were a defendant in this case. And that's because we were a defendant in the class action case that was copied. And, in fact, the indictments against some companies bear very little resemblance to the complaint that the Attorney General has filed here in terms of the duration of the conspiracy and the subject matter of the products that are alleged to be price fixed. Unless there are any further questions. Thank you. Roberts. Thank you, Mr. Curran. Mr. Massey, you have four minutes remaining. Thank you. Mr. Chief Justice, and may it please the Court, the issues that I would like to raise on rebuttal are limited. The most important thing is that jurisdictional schemes should be simple, administrable, predictable. The simplest route, the simplest interpretation is the one we have shown, that the statute is directed at actual plaintiffs with concrete claims that are proposed to be tried jointly. The only thing our friends on the other side have pointed out is the use of the word persons. Justice Sotomayor is 100 percent correct that the word persons is an echo of Rule 20, of the joinder rule, which also refers to persons and plaintiffs. So the fact that Congress used the word person once in the mass action definition simply confirms our point that the statute is really directed at the mass joinder, mass consolidation situation, and does not have anything to do with actions by sovereign States. Their primary argument seems to be that the Attorney General doesn't really own the claims in this case, that these are claims that are owned by the citizens of Mississippi. That is a classic State law issue which should be raised on remand in the State  A very similar Mississippi issue. Scalia Did not the Fifth Circuit decide that State law question? No, Your Honor, we don't believe so, that the Fifth Circuit ruled on its the interpretation of CAFA and said that for purposes of the statute, the claims were removable. But it didn't decide the Attorney General's authority to sue in the name of the State under the statutes which give him that authority. The — I don't — we don't think the Fifth Circuit decided that question. And I read the red brief at page 33 as saying the Attorney General's authority is not at issue here, that we assume the Attorney General has the authority to bring the claims in the complaint as he pled them, which is the restitution claim in the name of the State. And the — there was a decision in Mississippi in 2006, the only really relevant authority, it's called the BASF case, and there a lower court in Mississippi, the Chancery Court, upheld the Attorney General's authority to bring a very similar parents' case. Breyer What he says is in the complaint, it says, I praise that, the defendant be ordered to restitute any and all monies for the purchases of its citizens. All right. Now, you look at the statute he quoted, the Mississippi statute, and it says there is the authority to have restitution to restore to any person in interest any monies which may have been acquired by means of a practice prohibitive. So he says that sounds as if what you're talking about is you want restitution, though given to the State, the restitution is for individual purchases of individual citizens, because there could be no other, and therefore you have a list of people in mind, or you must find one, where there were particular individual purchases by individual citizens and get that restitution into the Treasury. All right. Now, that's — I think something like that was his argument, and I wanted to know what you were going to say. Are you going to give up these last five words and the purchases of its citizens? Scalia That's what I understood the Fifth Circuit to have held. Well, what the — what the prayer for relief says is the restitute to the State for its purchases and the purchases of its citizens. Breyer Right. And the purchases of its citizens. So the State will get the money. Breyer I know they'll get the money. But he's saying to get the money, you have to say which money. And to get the money, which money, means you better have a list of the individual people who bought something, for otherwise there is no such money, and that's enough to make those, in respect to this paragraph, individual people whose claims the State of Mississippi is pursuing. Something like that is his argument, and I just wanted to know your response. Sotomayor Well, the evidence will be proven through statistical aggregate evidence rather than a list of names. The list of names is impractical. The State will show basically on the basis of gross sales. Sotomayor But that has to go with the facts of this case. Don't go with the facts. Sotomayor Let's go with the point, which is that you, in a normal case, aren't you, in fact, suing for the citizens, the named citizens? Or citizens who have to be sued? Sotomayor In many cases we are. It is still a public remedy of restitution. In many cases, the individuals may be identified. Thank you. Roberts Thank you, counsel, counsel. The case is submitted.